UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:20-CV-217-BO

SHANNON PARKER, on behalf of
herself and all others similarly situated,

    Plaintiffs,

    v.

K&L Entertainment, Inc., d/b/a THE
GENTLEMEN'S PLAYHOUSE,

and

KRISHAN LAL,

    Defendants.

**DEFENDANTS' OPPOSITION TO MOTION FOR NOTICE TO POTENTIAL PLAINTIFFS AND FOR CONDITIONAL CERTIFICATION**

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PARKER'S MOTION FOR NOTICE TO POTENTIAL PLAINTIFFS AND FOR CONDITIONAL CERTIFICATION

Defendants K&L Entertainment, Inc., and Krishan Lal ("Defendants"), by counsel, respectfully request that the Court deny the motion (ECF No. 26) filed by Plaintiff Shannon Parker ("Parker"). In the alternative, Defendants request that the Court enter an order that limits the relief requested in Parker's motion.

### I.    BACKGROUND

Parker filed a motion for conditional certification of her FLSA action and for notice to issue to putative collection members (ECF No. 26). As part of her supporting affidavit, Parker alleges that she stopped dancing at the Gentlemen's Playhouse in January 2019. *See* ECF 27-1, ¶ 2. Further, Parker alleges that "Gentlemen's

1

Case 5:20-cv-00217-BO   Document 31   Filed 11/27/20   Page 1 of 11

Playhouse is in possession of documents and records containing the information as to the identities and work duties performed by the other exotic dancers at the Gentlemen's Playhouse club during the period 2017 through the present." *Id.*, ¶ 32.

On or about Wednesday, May 22, 2019, following a nuisance-abatement investigation, North Carolina Alcohol Law Enforcement ("N.C. ALE") agents executed a search warrant for the Gentlemen's Playhouse premises. The N.C. ALE agents seized and retained Defendants' business records and other physical evidence, including U.S. currency, sales records, and other items and documents. Accordingly, Defendants do not have in their possession the responsive records, such as any lists of names or contact information for dancers who performed at the club during the time period 2017 to 2019. Those records are still being held, to the best of Defendants' information and belief, by the State of North Carolina. Following the May 2019 search, the N.C. ALE agency suspended the liquor license for the Gentlemen's Playhouse, and sales significantly declined.

In March 2020, after the spread of the novel coronavirus ("COVID-19") pandemic in the United States, the Gentlemen's Playhouse ceased operations, and the club is not currently open for business.

## II. ARGUMENT

### A. Defendants oppose conditional certification.

Certification of a collective action is a two-stage process. *Pelczynski v. Orange Lake Country Club, Inc.*, 284 F.R.D. 364, 367 (D.S.C. 2012). "First, a plaintiff seeks conditional certification by the district court in order to provide notice to similarly

situated plaintiffs" that they can "opt-in" to the collective action. *Id*. at 367-68. At this "notice stage," the Court reviews the pleadings and affidavits to determine whether the plaintiff has carried her burden of showing she is similarly situated to the proposed class members. *Id*. at 368. "Because the court has minimal evidence, this determination is made using a fairly lenient standard," *Steinberg v. TQ Logistics, Inc.*, No. 0:10-CV-2507-JFA, 2011 U.S. Dist. LEXIS 38289, 2011 WL 1335191, at *1 (D.S.C. Apr. 7, 2011) (requiring plaintiffs to make a "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law."); *Purdham*, 629 F. Supp. 2d at 548. If the Court determines that the proposed class members are similarly situated, the Court conditionally certifies the class. *Steinberg*, 2011 U.S. Dist. LEXIS 38289, 2011 WL 1335191, at *1. The putative class members then are given notice and the opportunity to "opt-in," and the action proceeds as a representative action throughout discovery. *Id*.

Second, after the Court has conditionally certified the class, the potential class members have been identified and notified, and discovery has been completed, "a defendant may then move to decertify the collective action, pointing to a more developed record to support its contention that the plaintiffs are not similarly situated to the extent that a collective action would be the appropriate vehicle for relief." *Pelczynski*, 284 F.R.D. at 368. At this "decertification stage," the Court applies a heightened fact-specific standard to the "similarly situated" analysis. *Steinberg*, 2011 U.S. Dist. LEXIS 38289, 2011 WL 1335191, at *2. "Courts have identified a

3

number of factors to consider at this stage, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants that appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Curtis v. Time Warner Entm't-Advance/Newhouse P'ship*, No. 3:12-CV-2370-JFA, 2013 U.S. Dist. LEXIS 63603, 2013 WL 1874848, at *3 (D.S.C. May 3, 2013) (internal quotation marks and alterations omitted). If the Court determines that the plaintiffs are not, in fact, similarly situated, the Court may decertify the class, dismiss without prejudice the opt-in plaintiffs' claims, and permit the named plaintiffs to proceed on their individual claims. *Id.*

A collective action under the FLSA differs from a class action under Rule 23 of the Federal Rules of Civil Procedure. *See* 7B Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 1807 (3d ed. 2005). Unlike Rule 23 class actions, in FLSA collective actions, "plaintiffs must affirmatively 'opt in' to the suit in order to be considered a member of the class"; Rule 23's requirements of numerosity, typicality, commonality, and adequacy do not apply; and plaintiffs need only show that they and potential class members are "similarly situated" for the Court to certify the collective action. *Mancia v. Mayflower Textile Servs. Co.*, No. CCB-08-273, 2008 U.S. Dist. LEXIS 88170, 2008 WL 4735344 at *2 (D. Md. Oct. 14, 2008).

In support of conditional certification, Parker has only submitted her own self-serving and conclusory affidavit. Although Parker claims to base her assertions on her personal first-hand knowledge (ECF No. 27-1 at 4), she offers only broad and conclusory allegations with respect to the other dancers at the club, and these

4

assertions merely mirror the assertions that Parker makes about herself. *See, e.g., id.* at ¶¶ 7, 9, 11, 13, 15, 17, etc. As the Western District of North Carolina explained in *In Re Family Dollar FLSA Litigation*:

> Notice must be premised upon a "factual nexus" between plaintiffs and the proposed class members that is sufficient to demonstrate that [they] together were victims of a common policy or plan that violated the law. Reliance on a common job description and a uniform classification of Store Managers as exempt is insufficient for conditional certification. Even under the less strict notice stage standard, courts deny conditional certification where plaintiffs allege that potential collective action members are similarly situated because they were improperly classified by their employer as exempt from the FLSA because employees' status under the FLSA may vary, even if they have the same job title, if their job responsibilities and duties differ among each other.
>
> Under the FLSA, the court must examine the duties the employee actually performs in determining whether an employee is exempt. This analysis is extremely individual and fact-intensive, requiring a detailed analysis of the time spent performing managerial duties and a careful factual analysis of the full range of the employee's job duties and responsibilities. Employees with the same job title do not necessarily perform the same work, and thus courts deny notice where an individual determination of each class member's job duties is necessary to determine whether the employee was properly classified as exempt.

*In re Family Dollar FLSA Litig.*, No. 3:08MD1932-GCM, 2014 U.S. Dist. LEXIS 36206, 2014 WL 1091356, at *1-2 (W.D.N.C. Mar. 18, 2014) (internal quotations and citations omitted).

So too here. Based on these principles, conditional certification, even under a lenient standard, is inappropriate on this record. In her operative Complaint, Parker alleges merely that dancers were misclassified under the FLSA. *See*, *e.g.*, ECF No. 13 ("First Amended Complaint"), ¶ 1 ("Defendants had a systemic company-wide policy, pattern, or practice of misclassifying employees as 'independent contractors.'"); ¶ 52

("Defendants misclassified Plaintiffs as independent contractors when Plaintiffs should have been classified under the FLSA and NCWHA as an employee."). Parker has failed to offer plausible factual assertions that she is similarly situated sufficient to warrant conditional certification or a court-approved notice. Even if she could, there is no great practical benefit for conditional certification at this stage, especially in light of the need for an individual determination of each potential class member's job responsibilities and duties, as well as the small number of potential class members. *See Pelczynski*, 284 F.R.D. at 369 ("At best, a collective action would present the same manageability difficulties that separate actions would."). In comparison to other actions, Parker's proposed comparators are modest in number. *See* ECF No. 27-1, ¶ 3 (alleging that forty (40) other dancers performed at the club); *cf. Reich v. S. New England Telecomms. Corp.*, 121 F.3d at 61; 67–68 (discussing a 1,500-member class); *Morangelli v. Chemed Corp.*, 922 F.Supp.2d 278, 283 (E.D.N.Y. 2013) (discussing 432 opt-in plaintiffs).

Moreover, despite claiming to have worked alongside "forty (40) other women," (ECF No. 27-1, ¶ 3), Parker offers no indication that any other dancers affirmatively wish to join this suit, as they would be required to do in a conditional certification action. This factor weighs against approving conditional certification. *Thomas v. Argos USA, LLC*, Civil Action No. H-19-1941, 2019 U.S. Dist. LEXIS 178842, at *3 (S.D. Tex. Oct. 16, 2019) ("This court has consistently required a showing that other similarly situated individuals want to opt in to the lawsuit. [Plaintiff] has provided no affidavit or otherwise shown that others desire to join this lawsuit.") (internal

citations omitted). While a plaintiff's burden for conditional certification at this stage is not onerous, neither is it non-existent. Parker's threadbare assertions do not clear even this modest hurdle.

    **B.**    **<u>Defendants do not possess the responsive records</u>.**

Should the Court grant Parker's motion, Defendants will be substantially unable to comply with the requested relief because they do possess the records that Parker seeks. As explained above, the State of North Carolina, through its Alcohol Law Enforcement agency, seized Defendants' records by way of a search warrant; and the State has not returned those records.

During discovery, the Federal Rules require a defendant to produce records "in the responding party's possession, custody, or control." *See* Fed. R. Civ. Pro. 34(a). In the Fourth Circuit, to determine a party's discovery obligations with respect to records held by third-parties, courts have applied both the "Practical Ability" standard[1] and the "Legal Right Plus Notification" standard.[2] Under either standard,

---

[1] *Digital Vending Services International, Inc. v. The University of Phoenix*, No. 2:09-CV-555, 2013 WL 311820, at *6 (E.D. Va. Oct. 3, 2013) (ability to control is defined as "when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action") (internal citation omitted); *Grayson v. Cathcart*, No. 2:07-00593-DCN, 2013 WL 1401617, at *3 (D.S.C. Apr. 8, 2013) ("Control does not require legal ownership or actual physical possession of documents at issue; rather 'documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action.'"); *Ayers v. Sheetz, Inc.*, No.: 3:11-CV-00434, 2012 WL 5331555, at *1 (S.D.W. Va. Oct. 26, 2012) ("Control may be inferred, even when a party does not have possession or ownership of the evidence, 'when that party has the right, authority, or practical ability to obtain [the evidence] from a non-party to the action.'").

[2] *King v. American Power Conversion Corp.*, 181 F. App'x 373, 377–87 (4th Cir. May 17, 2006) ("Accordingly, the Kings failed to discharge their duty to afford

Defendants do not have access or control of the records that Parker seeks. Specifically, the State of North Carolina seized these records from Defendants without their consent under the authority of a search warrant from a court of competent jurisdiction. However, by advising Parker of these facts, Defendants respectfully submit that they will comply with their discovery obligations to give adequate notice, and Parker will be able compel the production of these records from the State with a subpoena under Fed. R. Civ. Pro. 45.

### C. Defendants request alteration of the Proposed Notice's content.

The FLSA does not lay out any specific requirements for the content of the opt-in notice. *Earle v. Convergent Outsourcing, Inc.*, 2013 U.S. Dist. LEXIS 126662, at *16 (M.D. Ala. Sep. 5, 2013) ("There is no binding statutory or case law defining what a collective action notice under § 216(b) must include or how involved the court must be in effecting notice."). Instead, content is left up to the broad discretion of district courts. *Id*. If the Court grants Parker's motion, Defendants respectfully request the modification of the content of Parker's proposed notice.[3] Specifically, Defendants

---

American Power sufficient notice. 'If a party cannot fulfill this duty to preserve [evidence] . . . , he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence.'") (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001)); *Ayers v. Sheetz, Inc.*, No. 3:11-CV-00434, 2012 WL 5183561, at *2 (S.D.W. Va. Oct. 18, 2012), *aff'd*, No. 3:11-CV-00434, 2012 WL 5331555 (S.D.W. Va. Oct. 26, 2012) ("This duty [to preserve] requires the party to 'identify, locate, and maintain information that is relevant to specific, predictable, and identifiable litigation' and to 'notify the opposing party of evidence in the hands of third parties.'") (internal citation omitted).

[3] Courts generally prefer that the parties meet and confer regarding the content of the notice before bringing the notice to the court. *See, e.g.*, *White v. Integrated Elec. Techs., Inc.*, No. 11-2186; 12-359, 2013 U.S. Dist. LEXIS 83298, at

request that the notice advise potential opt-in plaintiffs that they will be subject to discovery obligations, including the duty to divulge personal information in response to Defendants' interrogatories and to appear and be deposed under oath. Advising potential plaintiffs of their responsibilities will allow these individuals to make an informed decision on the costs and benefits of joining this action, as well as reduce the likelihood of any discovery disputes that require Court resolution. *See, e.g., Weckesser v. Knight Enters. S.E., LLC*, No. 2:16-CV-02053, 2019 U.S. Dist. LEXIS 95771, at *3 (D.S.C. June 7, 2019); *Zajac v. Red Wing, LLC*, No. 2:16-CV-01856, 2017 U.S. Dist. LEXIS 226003, at *3 (D.S.C. Dec. 13, 2017).

Moreover, the Court should not order for Parker's proposed notice to be disseminated through telephonic text message or e-mail. Defendants respectfully submit that first-class mail alone would be sufficient. *See, e.g., Gonzalez v. Scalinatella, Inc.*, 2013 U.S. Dist. LEXIS 168540, at *13 (S.D.N.Y. Nov. 25, 2013) (first-class mail sufficient and requiring no production of telephone numbers or e-mail addresses); *Hallissey v. American Online, Inc.*, 2008 U.S. Dist. LEXIS 18387, at *10-*13 (S.D.N.Y. Feb. 19, 2008). While the night club has ceased operations in response to the COVID-19 pandemic, Defendants do not object to the posting of a notice inside the club, if so ordered by the Court.

### D. <u>Defendants intend to seek decertification if necessary</u>.

---

*37 (E.D. La. June 13, 2013) (finding that the parties "should meet and confer regarding the form of the notice and consent that will be distributed to class members" before submitting the notice to the court for approval). Defendants did not have an opportunity to comment on the substance of the proposed notice before its submission to the Court.

9
Case 5:20-cv-00217-BO   Document 31   Filed 11/27/20   Page 9 of 11

Lastly, in the alternative, if the Court does order conditional certification, Defendants respectfully note their objection to certification for the record, and that they intend to file a motion to decertify near the close of discovery. *See*, *e.g.*, *Butler v. DirectSAT USA, LLC*, 47 F. Supp. 3d 300, 306-16 (D. Md. Sept. 18, 2014).

### III.     CONCLUSION

For all these reasons, the Court should deny Parker's motion for conditional certification and dismiss her conditional certification claim without prejudice. In the alternative, the Court should limit Parker's requested relief as Defendants do not have the responsive records in their "possession, custody, or control." *See* Fed. R. Civ. Pro. 34(a). Simply, the Court should not order Defendants to produce records that they do not have. Moreover, given Defendants' identification of North Carolina's Alcohol Law Enforcement agency as the likely current custodian of these records, this notification is enough for Parker to pursue a subpoena under Fed. R. Civ. Pro. 45. The Court should not order superfluous relief.

Dated: November 27, 2020.                                  Respectfully submitted,

| **LAW OFFICE OF** | **GAMMON, HOWARD, &** |
| **JOHN P. O'HALE, P.A.** | **ZESZOTARSKI, PLLC** |

/s/ John P. O'Hale                                                 /s/ Joseph E. Zeszotarski, Jr.
John P. O'Hale                                                      Joseph E. Zeszotarski, Jr.
N.C. Bar Number 6794                                         N.C. Bar Number 21310
P.O. Box 2383                                                        115 ½ West Morgan Street
Smithfield, N.C. 27577                                         Raleigh, N.C. 27601
(919) 934-6021                                                       (919) 521-5878
kim@jackohale.com                                            jzeszotarski@ghz-law.com

*Counsel for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing OPPOSITION through the electronic service function of the Court's electronic filing system, as follows:

Jason S. Chestnut
N.C. Bar Number 52066
GIBBONS LEIS, P.L.L.C.
14045 Ballantyne Corporate Place, Suite 325
Charlotte, North Carolina 28277
(704) 612-0038
Jason@GibbonsLeis.com

Dated: November 27, 2020.    Respectfully submitted,

**LAW OFFICE OF JOHN P. O'HALE, P.A.**

/s/ John P. O'Hale
John P. O'Hale
N.C. Bar Number 6794
P.O. Box 2383
Smithfield, N.C. 27577
(919) 934-6021
kim@jackohale.com